William Bruner, Defendant in Error, v. Elijah J. Fisher, Plaintiff in Error.

## Gen. No. 14,473.

VERDICTS—*when set aside as against the evidence.* A verdict clearly against the preponderance of the evidence will be set aside on review, unless the impropriety of the verdict is merely as to the amount thereof, in which case a *remittitur* will be required as a condition of affirmance.

*Assumpsit.* Error to the Municipal Court of Chicago; the Hon. MAX EBERHARDT, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1908. Reversed and remanded unless *remittitur* filed. Opinion filed October 29, 1909. Reversed and remanded November 9, 1909.

EDWARD E. WILSON, for plaintiff in error; EDWARD H. MORRIS, of counsel.

W. L. MARTIN and W. M. FARMER, for defendant in error.

MR. JUSTICE SMITH delivered the opinion of the court.

This writ of error brings before this court for review a judgment of the Municipal Court of Chicago in an action in that court involving a controversy which arose between the plaintiff in error and the defendant in error over certain real estate transactions between them.

It appears from the record that Fisher, the plaintiff in error, in April, 1906, had entered into a contract with one Boxley, an agent, for the purchase of two lots in the city of Chicago known as Nos. 2821 and 2823 Vernon avenue, for the sum of $2650. Later and before the purchase was closed, Bruner, plaintiff below, stated to Fisher, plaintiff in error, that he—Bruner—desired to purchase some real estate, and that he had about $1000 in cash which he could then pay on

the purchase price. Fisher called Bruner's attention to the Vernon avenue property, and went with Bruner to see it. Bruner, being satisfied with the property, agreed with Fisher to purchase the lots at the price of $2650 and paid $100 down as earnest money. Mr. Farmer, an attorney, was employed to examine the title and attend to closing the transaction. When the title was found to be good, Bruner paid Fisher $975, of which amount $75 was to defray Farmer's fees for his services in the transactions. A deed conveying the property to Fisher was delivered to Fisher, who at once endorsed on the bottom of the deed, "I, Elijah J. Fisher, transfer all my interest to William Bruner," and signed it and acknowledged it before a notary. Fisher's explanation of the fact that the deed was taken in his name is that it was done at the request of Bruner, who was having some difficulty with a brother, and a suit against him was threatened. This is denied by Bruner. We do not think that there was any fraud practiced or intended by Fisher in taking the title in this manner.

There was no encumbrance on the property at the time of the purchase of $1500. The purchase was made for $2650, subject to an encumbrance of $1650. Consequently Fisher, in closing the purchase, gave six notes, for $25 each, and a trust deed securing them on the property. This was explained to Bruner, and Fisher told him that if he would pay Fisher $135 in cash, he—Fisher—would pay the six notes as they became due. Bruner paid Fisher the $135. As a part of this transaction Fisher gave Bruner a note for $150, payable to W. A. Hawley, the vendor, to hold until he took up the six notes for $25 each, it being agreed between them that the $150 note to Hawley should be given back to Fisher, when the six notes were paid. Fisher paid the six notes, and thereafter, at an interview with Bruner on May 8, 1907, tore his signature from the note.

Bruner afterwards became dissatisfied with the property or was having some trouble with his family and told Fisher that he would like to get the property off his hands and sell him the property back. Fisher replied that he was not in a position to buy the lots. Bruner then said that all he wished was to get out of it what he had put into it. Fisher then purchased from Bruner one lot known as No. 2821 Vernon avenue giving him $402 in the notes of Dr. Brown, his —Fisher's—check for $100 dated November 28, 1906, and his own note for $75. Fisher also agreed to sell the other lot for Bruner, and subsequently found a purchaser, Mr. McQueenie, who took the property for $400 in cash and $200 in six months, according to Bruner's testimony.

From this purchase and the resales of the property, and the collection of rents from the property in the meantime by Fisher this controversy arose between the parties, Bruner claiming that Fisher owes him $391.96 which he sues to recover, and Fisher claiming that there is nothing due from him to Bruner.

We have had much difficulty in getting at the facts of this case and satisfying ourselves as to the truth of the claims of the respective parties, because of the condition of the record. Without stopping to discuss the details of the evidence we must content ourselves with a short statement of our conclusion as to the state of the account between the parties. After a careful consideration of the evidence we think that plaintiff in error, Fisher, is justly indebted to Bruner in the sum of one hundred and eight dollars. The utmost that Fisher, as the agent and trustee of Bruner, should be charged with in this action is the difference between $2650, the purchase price of the property, and $1500, the encumbrance on the property when Bruner purchased it, or $1150. To this should be added $45 for rents collected and $75 paid Farmer for legal services. This amounts in all to $1270. Bruner, we think, has no claim against Fisher based on the $150 note or the

transaction in which it was given. The evidence shows clearly that Bruner received $1,162 which should be credited on the above amount, leaving a balance of $108 due Bruner.

The judgment of the lower court is therefore reversed and the cause remanded unless defendant in error shall remit within ten days down to $108, in which case the judgment will be affirmed for that amount.

*Reversed and remanded unless remittitur is filed.*

November 9, 1909, reversed and remanded.